# In The United States Court of Appeals For The Ninth Circuit

THE GEO GROUP, INC.,
*Plaintiff-Appellant*,

and

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

GAVIN NEWSOM, in his official capacity as
Governor of the State of California,

XAVIER BECERRA, in his official capacity as
Attorney General of the State of California
*Defendants-Appellees*,

and

STATE OF CALIFORNIA
*Defendant-Appellee.*

On Appeal from the United States District Court for the Southern District of
California
Civ. Case Nos. 3:19-cv-02491-JLS-WVG & 3:20-cv-00154-JLS-WVG
(Honorable Janis L. Sammartino)

**BRIEF OF *AMICUS CURIAE* MANAGEMENT & TRAINING
CORPORATION IN SUPPORT OF PLAINTIFF-APPELLANT**

Steven J. Wells
Alex P. Hontos
Timothy J. Droske
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
(612) 340-2600

*Counsel for Amicus Curiae Management &
Training Corporation*

**RULE 26.1 DISCLOSURE**

Management & Training Corporation has no parent corporations. No publicly held company owns 10% or more of Management & Training Corporation.

**TABLE OF CONTENTS**

INTEREST OF THE *AMICUS CURIAE* ................................................................1

SUMMARY OF ARGUMENT ............................................................................6

ARGUMENT .....................................................................................................9

    I.    AB-32 is Preempted ...................................................................9

        A.    AB-32 Imposes an Unconstitutional Conflict in Technique as to Immigration Detention ...................................10

        B.    AB-32 is Preempted Because it Impermissibly Regulates Where an Immigration Detainee May be Detained and State Licensing of Federal Contractors....................................13

            1.    AB-32 Unconstitutionally Regulates Where an Immigration Detainee may be Confined ........................14

            2.    AB-32 Unconstitutionally Imposes State Licensing Requirements on Federal Contractors ...........................15

        C.    AB-32 is Preempted Because Regulations Carry the Same Preemptive Force as Statutes, and Federal Law Compels the Same Finding of Preemption for ICE as for USMS ....................................................................................19

    II.    AB-32 is Unconstitutional Under the Intergovernmental Immunity Doctrine .................................................................21

        A.    AB-32 Directly Regulates the Federal Government.................21

        B.    AB-32 Discriminates Against the Federal Government...........24

CONCLUSION .................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcantara v. Archambeault,*
No. 20cv0756 DMS (AHG), Doc. No. 106 (S.D. Cal. Jul. 22, 2020) ......................................................................................3

*Arizona v. United States,*
567 U.S. 387 (2012)..............................................6, 9, 10, 20

*Boeing Co. v. Masvassaghi,*
768 F.3d 832 (9th Cir. 2014) .......................................*passim*

*Gartrell Construction Inc. v. Aubry,*
940 F.2d 437 (9th Cir. 1991) .......................................*passim*

*Hillsborough County v. Automated Medical Laboratories, Inc.,*
471 U.S. 707 (1985).....................................................20

*Hines v. Davidowitz,*
312 U.S. 52 (1941)........................................................9

*Johnson v. Maryland,*
254 U.S. 51 (1920)......................................................12

*Leslie Miller, Inc. v. Arkansas,*
352 U.S. 187 (1956)...................................................*passim*

*North Dakota v. United States,*
495 U.S. 423 (1990)...........................................21, 25, 26

*United States v. California,*
921 F.3d 865 (9th Cir. 2019) .......................................*passim*

*United States v. Nye Cty.,*
178 F.3d 1080 (9th Cir. 1999) .......................................26

*VHC Inc. v. Peters,*
179 F.3d 1363 (Fed. Cir. 1999) .....................................18

iii

**Statutes and Regulations**

6 C.F.R. § 115.12(a) ................................................................................20

8 C.F.R. § 235.3(e) .................................................................................20

8 C.F.R. § 236.3(i)(1) .............................................................................20

8 C.F.R. § 236.6 .....................................................................................20

48 C.F.R. § 1.102(a) ...............................................................................17

48 C.F.R. § 1.601(a) ...............................................................................17

48 C.F.R. § 9.103(b) ...............................................................................17

48 C.F.R. § 9.104-1 .................................................................................17

48 C.F.R. § 9.104-1(d) ............................................................................17

48 C.F.R. § 17.208(f)-(g) ........................................................................18

48 C.F.R. § 52.217-8 ...............................................................................18

48 C.F.R. § 52.217-9 ...............................................................................18

6 U.S.C. § 112(b)(2) ...............................................................................20

8 U.S.C. § 1231(g) ..................................................................................19

18 U.S.C. § 4013 .....................................................................................19

18 U.S.C. § 4013(c)(2)(C) .......................................................................24

28 U.S.C. § 530C(a)(4) ...........................................................................20

41 U.S.C. § 253 .......................................................................................17

California Assembly Bill 32 ("AB-32") .........................................................*passim*

Cal. Penal Code § 9500(b) ...........................................................12, 22, 24, 26

Cal. Penal Code § 9501 .........................................................12, 15, 22, 24, 26

Department of Justice Appropriations Act of 2000, Pub. L. No. 106-113, 113 Stat. 1501 ....................................................................................20

**Other Authorities**

Management and Training Corporation, *Caring for Individuals in ICE Custody* (last visited Dec. 23, 2020), https://www.mtctrains.com/wp-content/uploads/2017/09/1pager_Detainee.pdf ......................................................1

Management & Training Corporation, *Imperial Regional Detention Facility: Preparing Detainees for Successful Re-Entry* (July 2020), https://www.mtctrains.com/wp-content/uploads/2019/08/IMPERIAL_Overview.pdf......................................2, 5

Management & Training Corporation, *Local Officials Impressed with Treatment of Detainees at Imperial Facility* (Aug. 7, 2017), https://www.mtctrains.com/corrections/community-leaders-impressed-with-treatment-of-detainees-at-imperial-facility/ ...............................4

Management & Training Corporation, *Social Impact Report* (2017), https://www.mtctrains.com/wp-content/uploads/2017/08/social-impact-report.pdf .......................................................................................4

Management & Training Corporation, *The MTC Difference in Immigration Detention* (last visited Dec. 23, 2020), https://www.mtctrains.com/wp-content/uploads/2017/10/The-MTC-Difference-In-Immigration-Detention.pdf......................................1, 3, 4, 5

Management & Training Corporation, *We Take You Inside to Show You MTC's Difference in Detention* (Sept. 5, 2018), https://www.mtctrains.com/detention/we-take-you-inside-our-three-ice-facilities-to-show-you-mtcs-difference-in-detention/ ..........................2

Management & Training Corporation ("MTC"), since 2006, has been a valuable partner to U.S. Immigration and Customs Enforcement ("ICE"), operating facilities with the highest standards in access to legal services and health care, and with regard to programming, environment, and staff culture.[2] MTC operates five detention centers[3] for ICE, which provide a combined 4,900 detainees at any given point in time with educational programs and other meaningful services during their short stay.[4]

One of these facilities, the Imperial Regional Facility ("Imperial") in Calexico, California, provides services for the San Diego area and falls within California Assembly Bill 32's ("AB-32") prohibition on the operation of a private detention facility within the State of California. AB-32, if upheld, may prohibit MTC from continuing to operate the Imperial facility after the current base period contract expires. This would result in job losses at that facility for the more than 200

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part. No party, no counsel for a party, and no person other than MTC and its counsel made a monetary contribution intended to fund the preparation or submission of this brief.

[2] *See* Management & Training Corporation, *The MTC Difference in Immigration Detention* (last visited Dec. 23, 2020), https://www.mtctrains.com/wp-content/uploads/2017/10/The-MTC-Difference-In-Immigration-Detention.pdf.

[3] MTC also operated the Taft Correctional Institute ("Taft") which was owned by the Bureau of Prisons ("BOP") and housed approximately 1,300 inmates. That contract expired in March 2020, and BOP has not renewed that contract or entered into another contract as BOP is currently making infrastructure repairs to the facility and has relocated all inmates.

[4] *See* Management and Training Corporation, *Caring for Individuals in ICE Custody* (last visited Dec. 23, 2020), https://www.mtctrains.com/wp-content/uploads/2017/09/1pager_Detainee.pdf.

staff employed at Imperial, and would negatively impact the community financially, where Imperial contributed over $900,000 to the County revenue, and over $1,000,000 in local spend.[5]

AB-32's prohibition on private detention would also interfere with the Federal government's efforts to enforce the Federal immigration laws. *See* U.S. ER83, GEO 2-ER-218 (Johnson Decl. ¶ 20). The Imperial facility provides approximately 700 detention beds, with each detainee spending approximately eight weeks on average at the facility.[6] ICE does not directly operate any facilities in California. Thus, if Imperial is required to close as a result of California due to AB-32's prohibition on private detention, it could mean the transfer of thousands of detainees to other states, negatively impacting immigration detention conditions across the nation, increasing costs to the Federal government, and undermining Federal objectives. *See* U.S. ER84, Geo 2-ER-219 (Johnson Decl. ¶ 22).

The enforcement of AB-32 will also detrimentally impact the detainees who would otherwise be at the Imperial facility. In many cases, detainees will be moved farther away from family or other support resources otherwise available during their stay at Imperial. Importantly, Imperial is a model facility. It has achieved

---

[5] *See* Management & Training Corporation, *Imperial Regional Detention Facility: Preparing Detainees for Successful Re-Entry* (July 2020), https://www.mtctrains.com/wp-content/uploads/2019/08/IMPERIAL_Overview.pdf [hereinafter *Preparing Detainees for Successful Re-Entry*].

[6] *See* Management & Training Corporation, *We Take You Inside to Show You MTC's Difference in Detention* (Sept. 5, 2018), https://www.mtctrains.com/detention/we-take-you-inside-our-three-ice-facilities-to-show-you-mtcs-difference-in-detention/ [hereinafter *Difference in Detention*].

nationally-recognized corrections and healthcare accreditations, including achieving over 99% compliance for both mandatory and non-mandatory standards in its most recent audit by the American Correctional Association, as well as accreditation from the National Commission on Correctional Healthcare.[7] Imperial's model operation was most recently acknowledged by a federal district court judge in addressing Imperial's response to COVID, stating that "[t]he conditions inside IRDF [Imperial] are a lone bright spot for Imperial County, generally, which, as of last week, had the highest rate of COVID-19 spread and highest COVID-19 mortality rate in California." *Alcantara v. Archambeault*, No. 20cv0756 DMS (AHG), Doc. No. 106, at *6 (S.D. Cal. Jul. 22, 2020).

Imperial is a modern, well designed facility. Its detainees are housed in areas that have an open living space with bunk beds, shower and bathroom facilities, a day room with televisions, phones and tablets to contact loved ones, and attached outside recreation area (in addition to the larger recreation yard). In addition, there is a medical and dental facility; several courtrooms where judges handle asylum and other cases via video conferencing; legal resources for detainees in the law library; and a partnership with a local victims' rights organization called the Sure HelpLine Crisis Center.[8]

The praises given to the Imperial facility are a far cry from the general vilification of all private detention facilities in the State's passage of AB-32. *See* U.S. ER93 (author comments). Margaret Souza, the executive director of Sure

---

[7] *See Difference in Detention*, *supra* note 6.
[8] *See Difference in Detention*, *supra* note 6.

HelpLine Crisis Center, praises the Imperial facility: "I love it. I love everything about it. I love the cleanliness. We go into the detention center, and it is peaceful. It is clean. They're well fed. They're well taken care of. I've met the medical doctor that's on call for them."[9] Local government officials concur. Alex Cardenas, the then-mayor of El Centro, California, when touring Imperial, said: "I have a very different perspective now being able to tour the facility. Again a lot of credit needs to be given to the staff. It's an incredibly clean facility. And what I really take away from the facility is the fact that they value human dignity."[10] Likewise, Ray Castillo, who serves on the Imperial County Board of Supervisors, District 5, praised the facility as "compar[ing] with some of the best [correctional institutions] that I've ever seen."[11] Current Calexico Council Member, and former Mayor Bill Hodge concurs, stating: "As an educator, I think that the progressive thought and approach here is to bring these detainees in and to transform them in a very positive way so that when they leave, they hopefully have a different mindset."[12]

This praise extends to other notable members of the community. Martha Garcia, the Imperial Valley College Superintendent/President, commented: "I am extremely impressed with the facility, the cleanliness and the commitment to serve those that are detained here and empower them to learn skills that they potentially

---

[9] *Difference in Detention*, *supra* note 6.

[10] Management & Training Corporation, *Local Officials Impressed with Treatment of Detainees at Imperial Facility* (Aug. 7, 2017), https://www.mtctrains.com/corrections/community-leaders-impressed-with-treatment-of-detainees-at-imperial-facility/.

[11] *Id.*

[12] *See* Management & Training Corporation, *Social Impact Report* (2017), https://www.mtctrains.com/wp-content/uploads/2017/08/social-impact-report.pdf.

did not have before they came here."[13]  Carlos Flores, who is with the Mexican Consulate in Calexico, stated:  "In my opinion, MTC is a very modern, it's a very functional, and it's a very clean place where they treat the inmates respectfully. . . . I like that they treat them with respect, that they're very thoughtful.  You can sense there's an atmosphere of camaraderie amongst the people who are here."[14]

AB-32 nonetheless seeks to shutter Imperial by categorically prohibiting its operation by MTC for ICE.  This Court's and the Supreme Court's preemption and intergovernmental immunities precedent, however, makes clear that the State's efforts to regulate federal contractors like MTC—particularly in the immigration space and in the area of ICE's federal procurement—is unconstitutional.  In particular, this Court's decision last year in *United States v. California*, 921 F.3d 865, 872 (9th Cir. 2019), made clear that the State ran afoul of the Constitution in passing immigration-related laws far less direct and onerous than AB-32.  MTC's brief can aid this Court in highlighting that the precedent relied upon in that case, and the line drawn in that decision between constitutionally permissible and impermissible State regulation, requires AB-32 be held unconstitutional as applied to privately-contracted immigration detention facilities such as Imperial.

---

[13] *Preparing Detainees for Successful Re-Entry*, *supra* note 5.

[14] *Difference in Detention*, *supra* note 6.

## SUMMARY OF ARGUMENT

Federal authority to operate free from State interference is at its zenith in the areas of Federal immigration laws and the Government's procurement of goods and services consistent with its identified needs and procurement regulations. The Supreme Court has recognized that "[t]he National Government has significant power to regulate immigration," and that in this area, "the State may not pursue policies that undermine federal law." *Arizona v. United States*, 567 U.S. 387, 416 (2012). Likewise, the Supreme Court has held that States are prohibited from regulating Federal contractors "in their specific attempt to obey [the Federal Government's] orders" and from "requir[ing] qualifications in addition to those that the Government has pronounced sufficient." *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956). Yet this is precisely what the State has done with AB-32—a law banning government contractors from operating private detention facilities, and which was specifically intended to apply to immigration detention facilities.

This is not the State of California's first effort to frustrate Federal immigration policy. But it is the State's boldest and direct effort to flaunt the constitutional dictates of the Supremacy Clause. AB-32 comes on the heels of three laws passed by the State "expressly designed to protect its residents from federal immigration enforcement." *United States v. California*, 921 F.3d 865, 872 (9th Cir. 2019). Two of those three laws—AB 450 ("which requires employers to alert employees before federal immigration inspections") and AB 103 ("which imposes inspection requirements on facilities that house civil immigration detainees")—were found to be unconstitutional in part on preemption or intergovernmental immunity grounds.

6

*See id.* at 872, 876-77, 882-85. The sole provision not found to be unconstitutional in at least some capacity—SB 54 ("which limits the cooperation between state and local law enforcement and federal immigration authorities")—was upheld only because the Court concluded that holding otherwise would violate the Anticommandeering Rule. *See id.* at 872, 888-91. The State with AB-32 has gone even further than the previous three measures already reviewed by this Court, by regulating *Federal contractors themselves*, like MTC, who operate ICE's detention facilities in California, and categorically requiring that they cease operation. This fundamentally frustrates the Federal Government's immigration-related operations and is an improper exercise of State review over the Federal Government's procurement decisions. Yet despite the State reaching to previously unprecedented heights in AB-32's interference with Federal immigration, the District Court upheld AB-32 from challenge as to ICE, incongruously finding the law preempted only as to the United States Marshals Service ("USMS").

The District Court's reasoning cannot stand under Ninth Circuit or Supreme Court precedent, which dictates that AB-32 imposes a preempted conflict in technique as to immigration detention. The District Court disregarded *California*'s admonishment that a State law regulating "where an immigration detainee may be confined . . . or mandat[ing] that ICE contractors obtain a state license" would be preempted. *See id.* at 885. Moreover, the District Court's distinction between finding preemption as to USMS, but not as to ICE, is irreconcilable.

AB-32 also violates the intergovernmental immunities doctrine. *Boeing Co. v. Movassaghi* sets forth the governing framework—"state laws are invalid if they

7

'regulate the United States directly or discriminate against the Federal Government or those with whom it deals.'" *Boeing*, 768 F.3d 832, 839 (9th Cir. 2014); *California*, 921 F.3d at 878 (quoting *Boeing* for the same). Yet the District Court's opinion goes out of its way to disregard *Boeing*, which is directly on point. Under *Boeing*, a State law "directly interferes with the functions of the federal government" and is thus unconstitutional if "[i]t mandates the ways in which [the Federal contractor] renders services that the federal government hired [the Federal contractor] to perform." *Boeing*, 768 F.3d at 840. The District Court improperly ignored this standard, instead retreating to cases in the tax context that *Boeing* itself recognized were "inapposite." *Id.* at 839.

The District Court also erred in holding that AB-32 does not discriminate against the Federal Government for intergovernmental immunity purposes. When properly viewed in its broader regulatory context, it is clear that AB-32 uniquely discriminates and burdens Federal immigration efforts. AB-32 is littered with exceptions to its categorical ban, most of which only apply to facilities under *State Court* jurisdiction, apply only to facilities housing *inmates* rather than detainees, or would cover institutions that do *not* include any of the kinds of detention facilities used by the Federal Government in the State, particularly in the immigration context. This is entirely consistent with AB-32's express aim to frustrate ICE's Federal immigration policy of contracting with privately-operated immigration facilities like MTC's Imperial facility. The Constitution forbids this discriminatory action by the State.

8

The District Court's finding that AB-32 could be enforced against immigration detention facilities—including model facilities like Imperial—is inconsistent with Ninth Circuit and Supreme Court precedent, incompatible with the District Court's own finding that AB-32 is unconstitutional as applied to the USMS, and must be reversed.

**ARGUMENT**

## I. AB-32 is Preempted

The standard for conflict preemption is well established. State law must fall "where 'compliance with both federal and state regulations is a physical impossibility,' and those instances where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona*, 567 U.S. at 399 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also California*, 921 F.3d at 878.

Applying this principle here compels a finding that AB-32 is preempted as to the privately-contracted immigration detention facilities. The Supreme Court has recognized that Federal authority is at its zenith in the areas of immigration, and the Federal Government's ability to procure goods and services consistent with its identified needs and procurement requirements. But the District Court allowed AB-32 to run roughshod over the Federal Government's authority in both of these areas.

In doing so, the District Court also ran afoul of this Court's recent decision in *California*. Although the District Court recognized *California* as "the Ninth Circuit's most recent and analogous guidance," *see* Oct. 8, 2020 District Court Opinion, U.S. ER30 n.12, GEO 1-ER-32 n.12, it ignored the clear line this Court

9

drew in *California* and that AB-32 crosses as to when State regulation in the immigration space is preempted, including State regulation of procurement. Moreover, the distinction the District Court drew between AB-32's enforcement as to USMS facilities, which were found to be preempted, and immigration facilities, which were not, is incongruous.

## A. AB-32 Imposes an Unconstitutional Conflict in Technique as to Immigration Detention

The Supreme Court has made itself clear: "The National Government has significant power to regulate immigration." *Arizona*, 567 U.S. at 416. Even when a State "may have understandable frustrations with the problems caused by illegal immigration . . . the State may *not* pursue policies that undermine federal law." *Id.* (emphasis added) (finding Arizona's immigration related laws preempted). Moreover, the Supreme Court has recognized immigration as an area where a "conflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy." *Id.* at 406 (applying this principle to hold that although both federal and state law sought to deter unlawful employment, state law was preempted that made it a crime for an alien to seek unauthorized employment, when federal law did not do so); *California*, 921 F.3d at 881 (recognizing principle that a "conflict in technique" can be preempted). AB-32 runs afoul of these basic principles.

Such a conflict in technique is precisely what AB-32 creates with respect to immigration detention policies. The record on this point is clear. ICE's policy— fully consistent with Congress and corresponding federal regulations—is that "ICE

neither constructs nor operates its own detention facilities" due to the "importan[ce] for ICE to maintain flexibility for its detention facilities" in light of "significant fluctuations in the number and locations of aliens." U.S. Mot. for Prelim. Inj., *U.S. ECF No. 8, at 10 ("U.S. Mot.") (citing Johnson Decl. ¶ 8). Instead, "ICE currently houses detainees in California under four contracts with operators of four private detention facilities," one of which is the Imperial facility operated by MTC. *Id.* (citing Johnson Decl. ¶¶ 15-18). AB-32 is directly aimed at frustrating ICE's technique for immigration-related detention by prohibiting federal contractors like MTC from operating facilities for ICE, thereby dictating how ICE can manage immigration detention in California—requiring ICE to either stop managing immigration detention or operate its own detention facilities in the State. AB-32 is a direct obstacle to Federal immigration policies by requiring the closure of the privately-operated facilities ICE deems central to immigration-related detention; frustrating ICE's priority on flexibility with respect to its detention policies; and threatening to strain the Federal Government's immigration system nationwide, particularly to the extent thousands of aliens in California may need to be transferred to facilities in other states.

AB-32 fundamentally differs from those portions of State law this Court upheld in *California* under this "conflict in technique" principle. This Court upheld AB 450's provisions requiring private employers to provide certain immigration-related notices to its employees on the basis that it only regulated the relationship "between employers and their employees," rather than the relationship "between federal immigration authorities and the employers they regulate." *California*, 921

11

F.3d at 881. For AB 450, "there is no 'conflict in technique,' because federal activity is not regulated." *Id.* In contrast, AB-32 directly regulates the Federal contractors themselves in their relationship with the Federal Government, and thereby regulates the manner in which ICE manages immigration detention in the State.[15] It does so by categorically prohibiting the Federal contractors from performing the very services the Federal Government contracted with them to perform—operating private immigration detention facilities. This is precisely what the Supreme Court has held States cannot do. "Such a requirement does not merely touch the [Federal] Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the [Federal] Government has pronounced sufficient." *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (quoting *Johnson v. Maryland*, 254 U.S. 51, 57 (1920)). AB-32 is preempted on this basis.

Significantly, because AB-32 directly regulates the Federal contractors themselves, AB-32 is also wholly distinct from SB 54, which this Court upheld against a preemption challenge. SB 54, for its part, prohibited State law enforcement agencies from transferring an individual to Federal immigration authorities unless there was a judicial warrant and probable cause determination. *See California*, 921 F.3d at 886. This Court acknowledged that "SB 54 may well frustrate the federal government's immigration enforcement efforts," but found "that frustration is

---

[15] AB-32 is explicit in this regard, with its prohibition specifically narrowed to entities like MTC operating a private detention facility "*pursuant to a contract or agreement with a governmental entity.*" *See* AB-32 § 2, Cal. Penal Code §§ 9500(b), 9501.

permissible, because California has the right, pursuant to the anticommandeering rule, to refrain from assisting with federal efforts." *Id.* at 890-91. Here, by contrast, the State cannot hide behind the anticommandeering rule to avoid preemption, because it is the Federal contractors themselves that are directly being regulated in AB-32.

AB-32 falls cleanly within the class of cases this Court in *California* recognized as being obstacle preempted: "state laws that affirmatively disrupted federal operations by mandating action (*or inaction*) contrary to the status quo. In each, a state statute affirmatively instituted a regulatory scheme that conflicted with federal law, either by commission . . . or omission (by demanding inaction that directly conflicted with federal requirements)." *California*, 921 F.3d at 888-89. Likewise, "[t]he solution to avoid conflict preemption was the same: invalidate the state enactment." *Id.* at 889. The same result is compelled here. AB-32 is preempted and must be invalidated.

### B. AB-32 is Preempted Because it Impermissibly Regulates Where an Immigration Detainee May be Detained and State Licensing of Federal Contractors

This Court in *California* also made clear where the line on preemption was drawn with respect to State laws specifically regulating federal immigration detention facilities. AB 103 authorized State inspections of immigration detention facilities. *See California*, 921 F.3d at 882. There, after first finding those portions of AB 103 that discriminated against federal detention facilities unconstitutional under the intergovernmental immunities doctrine, this Court upheld the remaining inspection-related provisions against a preemption challenge on the basis that AB

103 did not "evince[] states' active frustration of the federal government's ability to discharge its operations." *Id.* at 885. This Court, however, recognized that the State's police power was not without limits. On the one hand, this Court affirmed that while AB 103 "might require some federal action to permit inspections and produce data . . . [,] [the m]ere collection of such factual data does not (and cannot) disturb any federal arrest or detention decision." *Id.* Pointing to Supreme Court precedent where preemption was found to exist, this Court emphasized that in contrast with those decisions, "AB 103 does not regulate whether or where an immigration detainee may be confined . . . or mandate that ICE contactors obtain a state license." *Id.* AB-32, in contrast, unconstitutionally does these very things. It limits and disturbs Federal detention decision-making, dictating where an immigration detainee may be confined in the state (i.e., not in privately contracted facilities) and imposing State licensing requirements on Federal contractors.

### 1. AB-32 Unconstitutionally Regulates Where an Immigration Detainee may be Confined

AB-32 does precisely what this Court recognized a State cannot do. AB-32 directly regulates "where an immigration detainee may be confined" by forcing the elimination of privately-operated immigration detention facilities. *See California*, 921 F.3d at 885. This is the "states' active frustration of the federal government's ability to discharge its operations." *Id.*; *see also Tarble's Case*, 80 U.S. 397, 407 (1871) ("in the sphere of action assigned to [the Federal Government], it should be supreme and strong enough to execute its own laws by its own tribunals, *without interruption from a State, or from State authorities*.") (emphasis added) (discussed

14

by *California*).  ICE houses thousands of detainees each day at the four privately-operated detention facilities in California, including approximately 700 detainees at Imperial.  *See* U.S. ER81, GEO 2-ER-216 (Johnson Decl. ¶ 13).  The State specifically amended AB-32 to eliminate the Federal Government's ability to house immigration detainees at those facilities.  *See* U.S. ER93.  If AB-32 is upheld, it will effectively require ICE to either relocate thousands of aliens (including those at the model Imperial facility) to detention facilities outside California, or to purchase or construct its own, federally-operated facilities.  *See* U.S. ER84-85, GEO 2-ER-219-20 (Johnson Decl. ¶¶ 22, 25).  This is a direct, and preempted assault by the State on the Federal Government's ability to discharge its immigration-related operations and to dictate where an immigration detainee may be confined.

### 2. AB-32 Unconstitutionally Imposes State Licensing Requirements on Federal Contractors

The District Court's attempt to instead characterize AB-32 as "regulating 'person[s] . . . operat[ing] . . . private detention facility[ies] within the state'" does not save it from preemption.  *See* U.S. ER30 n.12, GEO 1-ER-32 n.12 (quoting Cal. Penal Code § 9501) (alteration by D. Ct.).  This Court in *California* appropriately recognized that State laws are preempted if they "prevented the federal government from entering into agreements with its chosen contractors until the states' own licensing standards were satisfied." *California*, 921 F.3d at 885 (citing *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189-90 (1956) (per curiam) and *Gartrell Construction Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991)).  As this Court has explained, such "a state licensing requirement is invalid as applied against a

contractor with the federal government because it results in interference with federal government functions and is in conflict with federal procurement legislation; its application is therefore precluded by the Supremacy Clause of the United States Constitution." *Gartrell Constr.*, 940 F.2d at 438 (citing *Leslie Miller*, 352 U.S. 187).

This is precisely what AB-32 does. It impermissibly bars the Federal Government from entering into or carrying out agreements with its chosen contractors to operate immigration detention facilities unless and until such private detention facility operators can make their facility comport with certain narrow statutory exceptions (none of which are applicable to federal immigration facilities). This is contrary to the Supreme Court's rule "that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them . . . ." *Leslie Miller*, 352 U.S. at 190. AB-32's constitutional infirmity is compounded by the fact that AB-32 "does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient." *Id.* ICE has decided to perform its duties in the area of immigration-related detention by contracting with private companies to operate such facilities. The State cannot require that the Federal Government, through its Federal Contractors, desist from operating such detention facilities unless and until the facility satisfies the State's narrow statutory exemptions in AB-32 (none of which a privately-operated immigration detention facilities can qualify for). AB-32 is thus preempted.

16

That AB-32 is conflict preempted is only further confirmed upon an examination of the Federal Acquisition Regulations ("FAR") themselves, which explicitly provide that the "authority and responsibility to contract for authorized supplies and services are vested in the agency head," who "may establish contracting activities and delegate broad authority to manage the agency's contracting functions to heads of such contracting activities." 48 C.F.R. § 1.601(a). The FAR includes several other provisions requiring the federal agency to determine that contractors are "responsible" and "otherwise qualified and eligible." 48 C.F.R. §§ 9.103(b), 9.104-1, 9.104-1(d); *see also Leslie Miller*, 352 U.S. at 189 (discussing similar procurement requirements); *Gartrell*, 940 F.2d at 438-41 (same). Furthermore, the FAR makes clear that it is the agency that gets to determine with whom it will contract, and that best value and competition are the touchstones for the selection of Federal contractors. *See* 48 C.F.R. § 1.102(a) (defining and describing best value contracting); *see also* 41 U.S.C. § 253 (CICA) ("full and open competition"). AB-32, by saying that the Federal Government cannot contract for detention services, runs roughshod over these Federal enactments, which vest authority in the Federal Government and create specific criteria for the award and performance of Federal contracts (none of which include among its criteria the State's prohibition of contracting, operations, or other blanket re-writing of Federal objectives). This creates a preempted impossibility of performance, where the FAR requires a contract to be awarded to the best-value facility operator, and AB-32 imposes its own requirement that the same Federal contractor cannot operate the facility under that contract.

This conflict and impossibility of performance is also on clear display to the extent the State seeks to enforce AB-32 against the options period of any already-existing contracts.[16] Federal law authorizes the United States to unilaterally extend the term of its contract for the options period specified in the contract. *See* 48 C.F.R. §§ 17.208(f)-(g), 52.217-8, 52.217-9. "Once exercised, the option bec[o]me[s] part of a single unitary contract," *VHC Inc. v. Peters*, 179 F.3d 1363, 1366 (Fed. Cir. 1999), and the Federal contractor is contractually obligated to continue performance if the option is exercised. AB-32 makes it impossible for such a Federal contractor operating a private detention center to comply with both its contractual obligations under Federal law and AB-32's bar on carrying out those very operations, including during the options period of any already-in-effect contract. The District Court's response that neither Congress nor the FAR require the *Federal Government* to contract with private detention facility operators, *see* U.S. ER41, GEO 1-ER-43, does nothing to answer the impossibility of performance for the *Federal contractor* obligated under the FAR and its contract to perform services for the Federal Government which the State forbids. AB-32 is thus preempted.[17]

---

[16] MTC disputes the State's position that the safe harbor provision in AB-32 § 9505(a) for contracts in effect before January 1, 2020, does not include the options period of any such contract.

[17] It is undisputed that the preemption issue as it relates to facilities under contract with ICE is properly before the Court. If preemption is found to exist, that will fully dispose of AB-32's applicability to the options period, making it unnecessary for the Court to address the separate question of whether the options period falls within the scope of AB-32's safe harbor—a question the Court should avoid since its jurisdiction over that issue has been questioned. *See* U.S. ER71, GEO 1-ER-73.

### C. AB-32 is Preempted Because Regulations Carry the Same Preemptive Force as Statutes, and Federal Law Compels the Same Finding of Preemption for ICE as for USMS

That AB-32 goes too far and is preempted is further confirmed by the District Court's explicit finding (unchallenged by the State on appeal) that AB-32 is preempted as applied to the USMS. *See* U.S. ER35-37, GEO 1-ER-3-39. The District Court focused upon 18 U.S.C. § 4013 concerning the USMS, and properly found "that AB-32 stands as an obstacle to the execution of the full purposes of Congress reflected in Section 4013," because "Congress clearly authorized USMS to use private detention facilities in limited circumstances," while "AB-32 would render *no* private detention facilities eligible to contract with USMS." *Id.* (emphasis in original).

The District Court's correct finding that AB-32 is preempted as to the USMS, cannot be squared with its finding that AB-32 is not preempted as to ICE. The District Court came to this incongruous result by concluding that while 8 U.S.C. § 1231(g), which pertains to alien detention, "articulates certain congressional objectives, such as purchasing or leasing available and existing facilities prior to the construction of new facilities, it does not express a clear intent that ICE lease private detention facilities in particular or, much less, contract with private parties to operate such facilities." U.S. ER34, GEO 1-ER-36. However, Section 4013 with respect to the USMS also does not *compel* the Federal Government to contract with private detention facilities. Both set forth circumstances where the Federal Government would be permitted but not required to contract for private detention facilities. Because there is no logical basis for distinguishing between 8 U.SC. § 1231(g) and

Section 4013, AB-32 stands as an obstacle to both the USMS and ICE,[18] and must be preempted as to both.

The District Court's error was compounded by its fixation solely upon whether immigration-related *statutes* "clearly and manifestly reveal a congressional intent that ICE detainees be housed in private detention facilities." U.S. ER35, GEO 1-ER-37. The District Court improperly brushed aside the "numerous regulations" promulgated by ICE specifically pertaining to privately-operated detention facilities,[19] by summarily stating—without citation to any legal authority—that the fact that "DHS has 'promulgated numerous regulations predicted on [its perceived] authority,' does not mean that the Court should find a clear and manifest congressional intent where one is lacking." U.S. ER41 n.14, GEO 1-ER-43 n.14 (quoting U.S. Opp'n, *U.S.* ECF No. 22, at 24-25 ("U.S. Opp'n"). That is in flagrant disregard of the Supreme Court, which has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985); *see also Arizona*, 567 U.S. at 407-10 (citing federal regulations, ICE Memorandum from the Director to All Field Office Directors, and DHS online Guidance in finding that Arizona's immigration-related law was obstacle preempted). When the full breadth of Federal policy is properly considered, AB-32 presents every bit as great of a

---

[18] This congressional intent that ICE be able to contract with private detention facilities is likewise evinced in other statutes, including 6 U.S.C. §112(b)(2); 28 U.S.C. § 530C(a)(4); Department of Justice Appropriations Act of 2000, Pub. L. No. 106-113, 113 Stat. 1501.

[19] *See* U.S. Opp'n at 24-25 (citing 6 C.F.R. § 115.12(a); 8 C.F.R. § 235.3(e); 8 C.F.R. § 236.3(i)(1); 8 C.F.R. § 236.6).

disruption and obstacle to the federal scheme for ICE as it does for the USMS. It is incongruous for AB-32 to be preempted as to the USMS, but not as to ICE.

## II. AB-32 is Unconstitutional Under the Intergovernmental Immunity Doctrine

Separate and distinct from preemption, the District Court also confused and misapplied the intergovernmental immunity doctrine as to AB-32. This is an independent basis for reversal. This Court in *California* properly recognized *Boeing*—a case directly on point here—as setting forth the governing framework for that doctrine: state laws are invalid "if they regulate the United States directly *or* discriminate against the Federal Government or those with whom it deals." *California*, 921 F.3d at 878 (quoting *Boeing Co. v. Masvassaghi*, 768 F.3d 832, 839 (9th Cir. 2014) (in turn quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality)). Here, AB-32 does both as to immigration detention facilities. It therefore must fall under the intergovernmental immunities doctrine.

### A. AB-32 Directly Regulates the Federal Government

*Boeing* properly recognized that a State law that "regulates the federal government directly [is] in violation of the Supremacy Clause." [20] *Boeing*, 768 F.3d at 842. That is precisely what AB-32 does. Both *Boeing* and *California* recognized that "[f]or purposes of intergovernmental immunity, federal contractors are treated the same as the federal government itself." *California*, 921 F.3d at 882 n.7; *Boeing*,

---

[20] *California*, while recognizing this general principle, confused the analysis when stating that "intergovernmental immunity attaches *only* to state laws that discriminate against the federal government and burden it in some way." *California*, 921 F.3d at 880. That effectively eviscerates the independent Supremacy Clause violation when the State directly regulates the Federal Government. *See Boeing*, 768 F.3d at 839-42.

768 F.3d at 839. AB-32, accordingly, directly regulates the Federal Government by directly regulating its Federal contractors.

There is no functional difference between the State prohibiting private immigration detention facilities from operating, and it directly barring the Federal Government from doing so. This was precisely AB-32's aim. The statutory definitions in AB-32 make clear that its prohibition that "a person shall not operate a *private detention facility* within the state," is exclusively limited only to a facility "*operating pursuant to a contract or agreement with a governmental entity.*" AB-32 § 2, Cal. Penal Code §§ 9500(b), 9501 (emphasis added). Moreover, the legislative history makes clear that AB-32 was specifically targeted at immigration facilities: "As amended, AB-32 expands the scope of the bill to provide a general ban of for-profit, private detention facilities in California—*including facilities used for immigration detention.*" U.S. ER93. (emphasis added). The State expressly recognized that AB-32's application against immigration detention facilities would specifically implicate *Federal* contractors. *See* U.S. ER94. (recognizing the Federal Government's immigration-related powers).

This direct regulation of the Federal Government, *vis-à-vis* Federal Contractors like MTC, is constitutionally prohibited by the intergovernmental immunities doctrine. *Boeing* holds that a State law "directly interferes with the functions of the federal government" if "[i]t mandates the ways in which [the Federal contractor] renders services that the federal government has hired [the Federal contractor] to perform." *Boeing*, 768 F.3d at 840. That is exactly what AB-32 does, by barring private operators of immigration detention facilities from rendering the

services the Federal Government hired them to perform.  Like in *Boeing*, the State law here "regulates not only the federal contractor, but the effective terms of [the] federal contract itself," and "directly interferes with the functions of the federal government." *Id.*  The District Court's opinion, if upheld, may invalidate the Federal Government's already-existing contract with MTC to operate the Imperial facility during the options period after the base period expires, and precludes contractors like MTC from performing services for the Federal Government going forward.  Doing so would directly interfere with the Federal Government's functions.  State law would require the Federal Government to act contrary to ICE's own policy of contracting with private immigration detention facilities, and instead either operate its own immigration detention facilities in the State, or transfer all detainees in California out-of-state.  Either option will stretch and strain ICE and the Federal immigration system.  The intergovernmental immunities doctrine precludes the State from doing so.

The District Court, for its part, recognized that direct regulation is an independent basis for finding the State to have violated the intergovernmental immunities doctrine, but improperly resorted to inapposite tax cases and their unique framework to decide the issue.  *See* U.S. ER51-57, GEO 1-ER-53-59.  *Boeing* is clear that cases discussing "generally applicable state tax laws, which resulted in merely an increased economic burden on federal contractors as well as others," are "inapposite," when what instead is at issue is a state law that "regulate[s] what the federal contractors had to do or how they did it pursuant to their contracts." *Boeing*, 768 F.3d at 839 (discussing *Gartrell*, 940 F.2d at 441).  Those are the circumstances

23

here. AB-32 does not merely impose some economic burden upon Federal contractors like MTC or the Federal Government itself. AB-32 instead directly regulates what Federal contractors, and in turn the Federal Government itself, must do—requiring the closure of privately-operated federal immigration detention centers. As cases like *Leslie Miller* and *Gartrell* make clear, such direct attempts by the State to specifically regulate and determine when Federal contractors can and cannot perform their obligations to the Federal Government is unconstitutional.[21] *See supra* Part. I.B.2.

## B. AB-32 Discriminates Against the Federal Government

AB-32 also independently fails under the intergovernmental immunities doctrine as to immigration detention facilities because the law discriminates against the Federal Government. *See generally Boeing*, 768 F.3d at 842-43. Although AB-32 purports to prohibit the operation of all private detention facilities whether under contract with the State or the Federal Government, it contains a number of carve-outs and exceptions for State facilities, and allows for no such exception for Federal immigration detention facilities. Many of the exceptions are specific to facilities housing people under state court jurisdiction. *See, e.g.*, AB-32 § 2, Cal. Penal Code § 9502(a) (State juvenile court jurisdiction); § 9502(b) (State court jurisdiction under

---

[21] The case for intergovernmental immunity as applied to immigration facilities is, if anything, even stronger than it is for the USMS. AB-32's direct regulation of the Federal Government must be held unconstitutional "unless Congress provides 'clear and unambiguous' authorization for such regulation." *Boeing*, 768 F.3d at 840 (quotation omitted). Unlike the USMS provision requiring that a private entity contracting with USMS to operate detention facilities shall "comply with all applicable State and local laws and regulations," *see* 18 U.S.C. § 4013(c)(2)(C), Federal immigration statutes have no similar provision as to privately-operated detention facilities.

the Welfare and Institutions Code); § 9502(d) (residential facility licensed under the State Health and Safety Code); § 9502(f) (State public health facility). And even an exception that on its face appears to be more generally applicable—like the exception for "[a]ny facility providing educational, vocational, medical, or other ancillary services"—is inapplicable to immigration facilities, because the exception is specifically limited to "*inmate*[s]," while Federal immigration facilities instead house "detainees." *See* U.S. ER83, GEO 2-ER-218 (Johnson Decl. ¶ 19). Similarly, the exception for any "facility that is leased and operated by . . . [a] law enforcement agency" uniquely discriminates against the Federal Government as to immigration, since neither in California, nor anywhere in the country, does ICE operate its own immigration detention facilities. *See* U.S. ER79-81, GEO 2-ER-214-16 (Johnson Decl. ¶¶ 8, 13).

The District Court erred by refusing to consider these prohibitions and exceptions as a whole, and instead focusing on each exemption individually to determine if AB-32 discriminates against the Federal Government and its Federal Contractors. *See* U.S. ER60-61, GEO 1-ER-62-63. The Supreme Court has emphasized that "the question whether a state regulation discriminates against the Federal Government cannot be viewed in isolation. Rather, the entire regulatory system should be analyzed to determine whether it is discriminatory . . . ." *North Dakota*, 495 U.S. at 435. Here, the District Court departed from that framework on the basis of this Court's decision in *Nye County*, which instructed that the court should "focus on the individual exemption" in those circumstances where "the statute contains a series of exemptions, *some of which favor the federal government*,

others of which favor the state, most of which are unconcerned with the federal/state distinction. . . ." U.S. ER60, GEO 1-ER-62 (quoting *United States v. Nye Cty.*, 178 F.3d 1080, 1088 (9th Cir. 1999)) (emphasis added). *Nye*, however, is inapplicable because—as described above—none of AB-32's exceptions discriminate in *favor* of Federal immigration detention facilities. All the District Court pointed to was Section 5003.1's direct prohibition on the State itself from entering into private detention facility contracts *outside* the State. *See id.* But Section 5003 is not part of any exemption to the blanket prohibition on the operation of private detention centers found in § 9501. It is a provision contained in an entirely different part of the Code directly regulating a State agency, not an "exemption" which favors the Federal Government.

When AB-32's provisions in Section 9500 *et seq.* are properly viewed as a whole, rather than on an exception-by-exception basis, it is clear that the provisions regulating operators of private detention facilities discriminatorily burden *Federal* facilities—particularly immigration facilities—in a manner different than other State facilities. In short, AB-32 carves out a series of exceptions allowing the State to continue to contract with privately-operated detention facilities, while ensuring that no similar exemptions are applicable to facilities operated for ICE, with the result being that privately-operated Federal immigration facilities are categorically barred. Such State discrimination against the Federal Government is prohibited by the intergovernmental immunity doctrine.

## CONCLUSION

The Constitution's Supremacy Clause means nothing if a State is free to regulate and directly interfere with Federal immigration policy and Federal procurement decisions by prohibiting Federal contractors from operating immigration detention facilities within the State. This Court should reverse the decision of the District Court as to AB-32's applicability to immigration facilities and find AB-32 unconstitutional under the Supremacy Clause.

Dated: December 29, 2020        DORSEY & WHITNEY LLP


By  s/Timothy J. Droske
     Stephen J. Wells
     Alex P. Hontos
     Timothy J. Droske
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

*Counsel for Amicus Curiae Management & Training Corporation*

# CERTIFICATE OF COMPLIANCE

This brief complies with the requirements of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(5), and (a)(7) in that it is printed in 14-point, proportionally-spaced typeface utilizing Microsoft Word 2016, and it contains 6,971 words, including headings, footnotes, and quotations.

Dated:  December  29, 2020         DORSEY & WHITNEY LLP


By  s/Timothy J. Droske
    Stephen J. Wells
    Alex P. Hontos
    Timothy J. Droske
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

*Counsel for Amicus Curiae*
*Management & Training Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2020, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 29, 2020    DORSEY & WHITNEY LLP

           By s/Timothy J. Droske
             Stephen J. Wells
             Alex P. Hontos
             Timothy J. Droske
           DORSEY & WHITNEY LLP
           Suite 1500, 50 South Sixth Street
           Minneapolis, MN 55402-1498
           Telephone: (612) 340-2600

           *Counsel for Amicus Curiae*
           *Management & Training Corporation*